**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| NEXUS PERFORATING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| C&J ENERGY SERVICES, INC., | ) | |
| | ) | |
| Defendant; | ) | Civil Case No. 4:20-cv-1539 |
| | ) | |
| NEXTIER OILFIELD SOLUTIONS, | ) | **JURY TRIAL DEMANDED** |
| INC., | ) | |
| | ) | |
| Defendant; and, | ) | |
| | ) | |
| STEVE DELOZIER, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**FIRST AMENDED COMPLAINT**</u>

PLAINTIFF Nexus Perforating LLC ("PLAINTIFF" or "NEXUS") for its Complaint

against Defendants, states and alleges the following:

<u>**I.  PARTIES**</u>

1.      PLAINTIFF is a limited liability company organized under the laws of the

State of Texas, having its principal place of business at 3311 Normandy Forest Ct., Spring,

Texas 77388.  PLAINTIFF is the owner of record for U.S. Pat. No. 10,352,136 ("the '136

patent"). Reel/frame: 051794/0400.

2.      Upon information and belief, Defendant C&J Energy Services, Inc. ("C&J")

is and/or was a corporation organized under the laws of the State of Delaware, having a

principle address and doing business at 3990 Rogerdale Road, Houston, Texas 77042. C&J's registered agent for service of process is CSC-Lawyers Incorporating, having an address at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. C&J was served.

3.     Upon information and belief, Defendant NexTier Oilfield Solutions, Inc. ("NEXTIER") is a corporation organized under the laws of the State of Delaware, having a principle place of business at 3990 Rogerdale Road, Houston, Texas 77042. NEXTIER'S registered agent for service of process is the Corporation Trust Company, Corporation Trust Center 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136, and it has been served.

4.     Upon information and belief, Steve DELOZIER ("DELOZIER") is an individual living in the State of Texas, and doing business in Houston at 3990 Rogerdale Road, Houston, Texas 77042. Service of process is proper and was made on this individual.

## II. JURISDICTION AND VENUE

5.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 United States Code, 35 U.S.C. §1, *et seq.*   This Court has subject matter jurisdiction for the claims of patent infringement under 28 U.S.C. §§1331 and 1338. The action asserts state causes of action for common law fraud, breach of implied contract, and negligent misrepresentation.  Venue is proper for any state claims based on the Court's power of supplemental jurisdiction.

6.     Defendants are subject to the jurisdiction of this Court by reason of their acts of patent infringement, and other tortious conduct, which has been committed in this Judicial District, and by virtue of its regularly conducted and systematic business contacts in this state.  Further, Defendants have a principal place of business at 3990 Rogerdale

Road, Houston, Texas 77042.  DELOZIER is subject to the jurisdiction of this Court by reason of his active participation in the patent infringement which is the subject of this lawsuit, and he has been served.

7.      Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

### III.    FACTS

8.      U.S. Pat. 10,352,136 ("the '136 patent") (attached herein as Exhibit A) issued to inventor Sergio F. Goyenneche (hereinafter "Sergio") on Jul. 16, 2019.  The '136 patent was duly assigned to Nexus and the assignment was recorded with the U.S. Patent and Trademark Assignment Database at Reel/Frame: 051794/0400.  Accordingly, Nexus is the owner of record and exclusive rights holder of the '136 patent.

9.      The '136 patent relates to an innovative way of wirelessly connecting perforating guns ("perf guns") into a long assembly, known as a string, that is then lowered down an oil-well and used to shoot a pattern of holes into the well casing so that oil can spill into the casing and then be harvested at the surface.  *See* Ex. A, pg. 2 (Abstract).  An example of two connected guns (identified as element 12) according to the '136 patent is provided below:



*FIG. 7*

**3**
**FIRST AMENDED COMPLAINT**

*See* Ex. A, pg. 9.

10.     Perf guns are assembled or connected into a string on-site.  In one mode of operation, a connected perf gun string delivers shaped charges[1] in firing-order down a well casing.  *See* Ex. A.  Before the '136 patented technology, guns were electrically connected with wires and this type of connection was often undesirable since the firing of an adjacent gun in the string would sometimes damage the wiring and cause a mid-string cease-fire. *Id.*, at pg. 10 (Col. 2:4-16).  The '136 patent (as exemplified by the preferred embodiment above) improved the state of the art when it described a more reliable electromechanical connection of two perf guns without wires in a way that protected the connection from being damaged by proximately detonated charges.  *See Id*. at pg. 2 (Abstract).

11.     The patent application underlying the '136 patent was filed on May 15, 2015 with a request for treatment under the International Phase of the Patent Cooperation Treaty (PCT) (Application Number PCT/US2015/031047).  A related U.S. Patent Application (Ser. No. 15/312,120) was timely filed on Nov. 17, 2016.  The '136 patent issued Jul. 16, 2019 with claims 1 through 20.  *See* Ex. A. While the PCT patent was pending, Sergio, on behalf of NEXUS, developed a line of the patent pending perforating guns and/or parts that could be assembled on-site into the gun assembly.  NEXUS then began selling the perf guns or parts featuring the patent pending technology.  An example of an electromechanical connection between two perf guns, as designed by Nexus, is illustrated below:

[1] A "shape charge" is an explosive inside a cavity where the explosive upon detonation produces a detonation wave front determined by the shape of the cavity.

**4**
**FIRST AMENDED COMPLAINT**



12.     C&J was a perf gun manufacturer.  On or about March 30-31, 2016, NEXUS communicated with DELOZIER, a technology manager at C&J, to discuss the "patent pending" technology and the feasibility of implementing into C&J's products the electromechanical connection designed by Nexus.  At C&J, from about September 2012 to 2017, DELOZIER held titles such as "Senior Director, Perforating Technologies and Compliance" and "Director of Perforating Technology" where his responsibilities included "lead buyer & liaison for 3rd party perforating purchases."   In about March 2017, DELOZIER contacted NEXUS and expressed significant interest and sought more information from Sergio about the NEXUS technology and its electromechanical gun connection designs.  DELOZIER sought an in-person meeting with Sergio to see samples of NEXUS' perf guns and this happened in late March 2017.

13.     Sergio, on behalf of NEXUS, again met with DELOZIER on Mar. 31, 2017 to review parts that NEXUS developed for C&J guns.  During and after the meeting, further modifications of NEXUS parts for C&J guns were made and different sized parts were developed.  NEXUS continued development of perforating guns and/or parts that could specifically be used in C&J's existing gun plans to accomplish an electromechanical connection like NEXUS used in its perf guns.  C&J worked with NEXUS and made modifications to the parts to retrofit to C&J's existing gun plans. Parts were developed based on extensive contractual communications between C&J and NEXUS about uses and

sales from NEXUS to C&J.  C&J purchased small orders of parts, but with the agreement that larger orders would be forthcoming of the NEXUS parts.  NEXUS developed the parts for C&J's perf guns in exchange for representations that it would be the exclusive provider of those parts for C&J when and as it expanded production.

14.     C&J's guns using NEXUS' parts were successfully tested in Denver, Colorado around October 9, 2017.  Consistent with prior representations, DELOZIER told NEXUS of forthcoming part orders to retrofit 15,000 guns per month for the upcoming 2018 year.  After this meeting, however, DELOZIER completely stopped communicating with NEXUS.

15.     Later, NEXUS learned that C&J, without ever having delivered the promised business, came out (circa July 2018) with an electromechanically connected perf gun assembly called the "GameChanger™ Perforating System." ("GameChanger™") ("GameChanger")(see attached Exhibit B and Exhibit C marketing materials for the GameChanger). Sergio discovered GameChanger™ because it was put on display by C&J at a Galveston Convention.

16.     When Sergio learned of the GameChanger™ being shown at the convention and read the marketing materials, Sergio knew that NEXUS' designs and parts had been misappropriated via false promises of business. Marketing materials for the GameChanger™ show the following image:

**FIRST AMENDED COMPLAINT**



*See* Ex. B.  With respect to the GameChanger, the same marketing materials say:

> "The GameChanger perforating system features a semi-disposable gun assembly designed to increase efficiency and reliability by eliminating the misruns and resulting NPT associated with traditional gun systems. It is compatible with all manufacturers' standard shaped charges and uses addressable switches to provide real-time confirmation throughout the downhole descent. With no wires running between guns, the system provides design improvements that deliver a high level of confidence in the wellbore."

*See* Ex. C.  GameChanger™ is clearly a copy of the parts and units developed by NEXUS for C&J for testing because the GameChanger™ wirelessly connects guns using NEXUS' parts (or derivatives thereof) developed during the testing of C&J guns with NEXUS.  No orders were ever made by C&J despite the agreement.

17.     At various times, NEXUS reached out to C&J to address the misappropriation.  However, no legitimate efforts were made to compensate NEXUS for its efforts and C&J absconded with proprietary information that was shared with them based on false promises of business.  No legitimate efforts were made to compensate NEXUS for its efforts.  DELOZIER called Sergio and offered a lowball "lump sum" for the infringements moving forward.  On Aug. 31, 2018 C&J asked for a "paid up license" for the "patent pending" rights.  NEXUS did not agree.  C&J made further attempts to

**FIRST AMENDED COMPLAINT**

obtain a license for its infringements of NEXUS' technology, but not at rates that were reasonable, or that would excuse the lack of good faith in its dealings with NEXUS, or the surreptitious use of NEXUS technology in its "GameChanger$^{TM}$" product.

18.     On information and belief, C&J merged or reorganized with KEANE to form NEXTIER.  The exact nature of the new entity or DELOZIER's role in the entity is not yet known.  However, the GameChanger$^{TM}$ continues to be made, sold, and used by NEXTIER without a license and in violation of the '136 patent.

19.     NEXTIER appears to be a successor in interest to the business of C&J so that the actions of C&J, including tortious and contractual breaches of C&J are believed to be liabilities of NEXTIER, including in each of Counts 1-5 below.

## IV.     COUNT 1

### (Patent Infringement)

20.     PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

21.     Upon information and belief, in violation of 35 U.S.C. § 271(a) Defendants directly infringed and continue to infringe the '136 Patent by making, using, selling and/or offering for sale in the United States, including within this Judicial District, products that infringe one or more of the claims of the '136 Patent, all without authority of PLAINTIFF.

22.     Upon information and belief, DELOZIER has directly infringed the '136 patent under 35 U.S.C. § 271(a) because he used and/or sold the patented technology he misappropriated, he knew about the patent, and on information and belief, received some form of remuneration and/or compensation for delivering the misappropriated technologies

to C&J as well as its successor entity, NEXTIER, which would perpetuate the making, using and selling of the technology without ever including PLAINTIFF.

23.     Upon information and belief, DELOZIER further induced the infringement of the '136 patent under 35 U.S.C. § 271(b) by actively inducing the infringement of NEXTIER and C&J.  DELOZIER was intimately familiar with the technology, with the '136 patent owner (who he conned), and the value of the technology, which he acted with knowledge and intent to infringe, and by encouraging others to do the same.   On information and belief, he may have even taken credit for development of the GameChanger™ Technology, and/or obtained compensation for development of the GameChanger™ patented technology, and/or directing C&J to produce the GameChanger™.   To the extent DELOZIER received compensation, he was an active participant in direct infringement for sale and use of the technology under 35 U.S.C. § 271(a), and also induced infringement under § 271(b).

24.     An infringement claim chart for the independent claim of the '136 patent is appended below.  The language of the claim is provided in the left column with each limitation of the claim presented in its own row.  The asserted basis for infringement, row-by-row and limitation-by-limitation, is provided in the second column on the right.  The chart is provided below:

| Claim 1 | The GameChanger™ |
|---|---|
| 1. A gun assembly for perforating wells comprising: |  **DESCRIPTION** The GameChanger perforating system features a semi-disposable gun assembly |
| at least one gun body casing, the casing being a hollow cylinder, with a box fitting at each end; |  |
| a charge carrier, the carrier being a hollow cylinder, with exterior diameter less than the interior diameter of the casing, and a length shorter than the distance between the box fittings of the casing; |  |
| a plurality of shape charges positioned radially inside the charge carrier and inter connected by a detonator cord; |  |
| a plurality of end caps affixed to the ends of the carrier and axially aligning the carrier within the casing between the box fitting ends, and secured therein; |  |

| | |
|---|---|
| at least one end cap being of a durable material, electrically conductive and electrically connects the charge carrier of the gun body; |  |
| an addressable detonation switch electrically connected between an inner side of at least one end cap and the plurality of shape charges within the charge carrier. | |

25.     Several other patent claims that depend from the asserted independent claim are also infringed.  These asserted claims and related infringement charts will be provided at a later date in accordance with the local patent rules.

26.     PLAINTIFF has been harmed by Defendants' infringing activities.

27.     PLAINTIFF is entitled to an injunction and damages of not less than a reasonable royalty and/or its lost profits.

## COUNT II

### (Willful Infringement)

28.     PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

29.     Upon information and belief, DEFENDANTS acted with intent in their continued infringement of PLAINTIFF's '136 Patent.  Not only have DEFENDANTS had

notice of the '136 Patent, but DEFENDANTS, without justification, continue to flagrantly infringe the '136 Patent.

30.    As such, upon information and belief, DEFENDANTS have willfully infringed the '136 Patent and PLAINTIFF has been harmed by Defendants' activities.

## COUNT III

### (Common Law Fraud)

31.    PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

32.    The elements of fraud are (1) a material false representation or omission, (2) that was made with knowledge or recklessness as to its falsity, (3) with the intent to induce reliance, and (4) that the other party "actually and justifiably relied upon," causing him injury.

33.    DELOZIER and C&J made materially false representations and omissions of fact to NEXUS and its principle Sergio. Specifically, these DEFENDANTS (DELOZIER and C&J) worked with Sergio and engaged in extensive communications over the course of about a year in the form of emails, in-person meetings, and phone calls where they discussed, in-depth, specifications for products and proprietary technologies that these DEFENDANTS (DELOZIER and C&J) stated would be purchased from NEXUS after successful testing, and in exchange for know-how, technological improvements, and product development.  These statements were false promises of future performance and were known to be false, and made as a pretext for acquiring valuable information on NEXUS technological improvements, patent pending technology, and engineering

experience that could be harnessed for the DEFENDANTS' own secreted purposes. At no time during this extensive relationship where confidential information was being exchanged and business being offered did DELOZIER or C&J make known to NEXUS that they were developing in secret their own products using NEXUS technology, which they would later release and call "the GameChanger$^{TM}$" based on NEXUS' information, engineering efforts, and then patent pending technology.

34.    The aforementioned misrepresentations and omissions by DELOZIER and C&J were made with knowledge or recklessness as to falsity and with deceptive intent to induce reliance by NEXUS and Sergio. DELOZIER exploited the promise of future business to exact valuable information and product development from Sergio and NEXUS, all the while omitting critical facts about their own development of the (GameChanger$^{TM}$). Had NEXUS known the actual facts and *modus operandi* of DELOZIER and C&J, it never would have dealt with them or shared critical information.

35.    NEXUS actually and justifiably relied on the misrepresentations and omissions by DELOZIER and C&J.

36.    NEXUS has been proximately injured and actually damaged because of these misrepresentations and omissions. NEXUS has been damaged in the form of profits and royalties it might have earned from C&J, and has also now lost market share that belongs to NEXUS, to the extent DELOZIER and C&J harnessed NEXUS technology.

37.    NEXUS' injury resulted from DEFENDANTS' actual fraud, gross negligence, or malice, which entitles plaintiffs to exemplary damages under TEX.CIV.PRAC.REM.CODE §41.003(a). To the extent NEXTIER is a successor in interest

of C&J, it is liable for the C&J's conduct and that of its former officers and directors.

## COUNT IV

### (Negligent misrepresentation)

38.     PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

39.     The elements of a cause of action for negligent misrepresentation of material facts include: (1) the representation made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the PLAINTIFF suffers pecuniary loss by justifiably relying on the representation.

40.     DELOZIER and C&J by and through their representative and employee, DELOZIER (who was an officer and director), made negligent misrepresentations, errors and omissions in their dealings with NEXUS and Sergio that were at least negligent. DELOZIER made false representations that C&J would conduct future business with NEXUS in exchange for access to valuable information on NEXUS technological improvements, patent pending technology, and engineering experience that could be harnessed for the DEFENDANTS' own purposes.

41.     DELOZIER and C&J did not exercise reasonable care or competence in communicating with Sergio or NEXUS, and for the likelihood that NEXUS would act in good faith on representations of future business in exchange for product development efforts.

42.     PLAINTIFF has therefore been proximately damaged in the lost value of sharing its knowhow, technological improvements, patent pending technology and engineering experience, which should have resulted in profits in sales to C&J, and/or royalties, and market share for its own technology.

## COUNT V

### (Breach of Contract)

43.     PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

44.     The elements of a cause of action for the breach of contract are: (1) the existence of a contract; and, (2) breach.  C&J breached express and/or implied contracts with NEXUS. Express and implied contracts require the element of mutual agreement, which in the case of an implied contract is inferred from the circumstances.  The conception is that of a meeting of the minds of the parties as implied from and evidenced by their conduct and course of dealing, the essence of which is consent to be bound.

45.     In the instant case, there was a mutual understanding between NEXUS and C&J that NEXUS would share valuable information on NEXUS technological improvements, patent pending technology, and engineering experience, in exchange for use and future business by C&J of NEXUS technology for a reasonable fee.  NEXUS was not developing C&J specific products and sharing technology with the expectation that it would be for free, much less misappropriated and used in their own unlicensed products.

46.     C&J breached the contract it had with NEXUS.  NEXTIER is the successor in interest of C&J and is therefore liable for C&J's breach.

47.     NEXUS has been damaged as a result.

48.     NEXUS seeks attorney fees by reason of breach of contract under TEX.CIV.PRAC.REM.CODE §38.001 *et seq.*

## COUNT IV

### (Quantum Meruit)

49.     PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

50.     The elements of this cause of *quantum meruit* are: (1) Plaintiff performed valuable services for the Defendant; (2) Defendant accepted, uses, and enjoys those services; and (3) under the circumstances, Defendant was reasonably notified that the Plaintiff expected payment for those services which, which the Plaintiff did not receive.

51.     Plaintiff provided product design services to defendant. Plaintiff designed parts that could be used with Defendant's perforation guns.  The parts, and the services and engineering used to implement them, were put into Defendant's perforation guns and successfully tested by Defendant.   Defendant acknowledged that the product was successful.  Defendant NEXTIER continues to sell the product designed by PLAINTIFF, and enjoying the benefit of the uncompensated labor and services.

52.     Defendants knew that PLAINTIFF expected compensation for the services. PLAINTIFF was to be compensated in the form of part orders and business relationships. DEFENDANTS presumptively intended to avoid paying plaintiff for the service because they produced a line of perforation guns using parts designed by PLAINTIFF, but which were not ordered through PLAINTIFF.  DEFENDANTS failed to pay for the services even

though PLAINTIFF provided defendant with notice.

53.     NEXUS has been damaged as a result of DEFENDANTS' conduct. NEXTIER is the successor in interest of C&J and is therefore liable for C&J and its employee, DELOZIER's conduct.  NEXTIER has benefited from the services taken from PLAINTIFF.

54.     Plaintiff is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code section 38.001(1) to (3).  Plaintiff retained counsel who presented a claim, and Defendants did not tender the amounts owed.

55.     Plaintiff seeks damages within the jurisdictional limits of this Court.

## COUNT V

### (Common Law Misappropriation)

56.     PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

57.     The elements of a cause of action for misappropriation include: (1) Plaintiff created a product through his or her extensive time, labor, skill, and money; (2) Defendant free-rode on the Plaintiff's work by using the product to engage in direct competition; and (3) the Plaintiff is commercially damaged as a result.

58.     In this case, PLAINTIFF designed parts for improving DEFENDANT'S perforation guns.   The design of these parts involved considerable research and development, know-how and engineering experience of PLAINTIFF.  Furthermore, these parts were designed through Plaintiff's extensive time, labor, skill, and money.  During the design process, did not provide any money to assist in the development of the parts.  The

parts were successfully tested by DEFENDANTS.   DEFENDANTS were supposed to compensate PLAINTIFF for his efforts, but compensation was never provided. DEFENDANTS are free-riding on PLAINTIFF'S design efforts since parts have been and are presently used to improve DEFENDANT'S perforation guns.

59.     NEXUS has been damaged as a result of C&J's original misappropriation. NEXTIER continues to exploit the misappropriated know how and engineering experience and, as the successor in interest of C&J, is therefore liable for C&J's and its misappropriation.

60.     Plaintiff's injury resulted from defendant's willful and malicious misappropriation of plaintiff's proprietary information, which entitles plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 134A.004(a)-(b).

## COUNT VI

### (Civil Conspiracy)

61.     PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

62.     The elements of a cause of action for civil conspiracy include: (1) two or more persons; (2) object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.

63.     In this case, DELOZIER and C&J conspired to trick NEXUS into disclosing its proprietary know-how and into developing parts that would implement the '136

technology in C&J's perf guns.  DELOZIER met with NEXUS and made false promises to induce NEXUS' disclosures of know-how and development of parts for C&J's perf guns. DELOZIER and C&J used NEXUS' disclosures to develop the GameChanger$^{TM}$. DELOZIER and representatives of C&J, and on information and belief, NEXTIER, had a meeting of the minds about the valuable technology they wanted to acquire from PLAINTIFF without having to pay fair market value for the products or services.  They took one or more overt, unlawful, and unethical acts in furtherance of the conspiracy, and did in fact deprive PLAINTIFF of the value of his knowhow, trust and engineering experience.

64.     NEXUS has been damaged as a result of C&J's original misappropriation. NEXTIER continues to exploit the misappropriated know how and engineering experience and, as the successor in interest of C&J, is therefore liable for C&J's and its misappropriation.

## COUNT VII

### (Respondeat Superior)

65.     PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

66.     NEXUS has been damaged as a result of C&J's original misappropriation and tortious actions as outlined in this complaint.  NEXTIER continues to exploit the misappropriated know how and engineering experience and, as the successor in interest of C&J, is therefore liable for C&J's and its misappropriation.  Under the Doctrine Respondeat Superior, C&J was responsible for the tortious actions of DELOZIER which

were undertaken in the course and scope of his employment at C&J.

## COUNT VIII

### (Promissory Estoppel)

67.     PLAINTIFF re-alleges the allegations contained in previous paragraphs as if fully set forth herein.

68.     DEFENDANT C&J and DELOZIER promised PLAINTIFF that DEFENDANT would compensate it with future business and exclusivity in exchange for services, knowhow, and product designs adapted for its products.  PLAINTIFF relied on DEFENDANTS' promises in this regard by delivering its services, products, and knowhow.  Because of the nature of the promise, PLAINTIFF's reliance was both reasonable and substantial.  DEFENDNATS C&J and DELOZIER knew, or reasonably should have known, that PLAINTIFF would rely on DEFENDANTS' promises to exclusively order products from PLAINTIFF to fit its product lines.  PLAITNIFF's reliance on DEFENDANT's promise resulted in injury to PLAINTIFF, which caused damages in the form of lost sales, and market share it could have sold or delivered elsewhere for fair market value.

69.     PLAINTIFF seeks damages within the jurisdictional limits of the court.

70.     PLAITNIFF is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code  section 38.001(8) because this suit is for promissory  estoppel.  Plaintiff retained counsel, who presented the plaintiff's claims and the DEFENDANTS did not tender the amounts owed.

## PRAYER FOR RELIEF

Wherefore, PLAINTIFF NEXUS demands judgment for itself and against DEFENDANTS as follows:

A.  An adjudication that the '136 Patent is valid;

B.  An adjudication that DEFENDANTS have infringed the '136 Patent;

C.  An award of damages to be paid by DEFENDANTS adequate to compensate PLAINTIFF for past infringement of the '136 Patent and any continuing infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringement acts, including, but not limited to, those acts presented at trial;

D.  An award of damages to be paid by DEFENDANTS for their tortious conduct that damaged PLAINTIFF;

E.  An award of exemplary damages to be paid by DEFENDANTS consistent with TEX.CIV.PRAC.REM.CODE §41.003(a).

F.  An injunction enjoining DEFENDANTS and their respective officers, directors, agents, servants, employees, affiliates, attorneys, and all other acting in privity or in concert with them from directly or indirectly infringing the '136 Patent;

G.  An award of enhanced damage in accordance with the patent laws for willful infringement;

H.  A declaration that DEFENDANTS' infringement is willful;

I.  A declaration that this case is exceptional under 35 U.S.C. § 285 and an award to PLAINTIFF of its reasonable attorney's fees;

J.  An award of prejudgment and postjudgement interest;

K.  An award of reasonable attorney fees as may be equitable or authorized by statute;

L.  An award of PLAINTIFF's costs of this litigation; and,

M. An award to PLAINTIFF of such further relief at law or in equity as this Court

deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rules of Civil Procedure Rule 38(b), PLAINTIFF hereby demands a trial by jury on all issues triable as such.

Date: <u>August 4, 2020</u>                    Respectfully submitted,

BUCHE & ASSOCIATES, P.C.

<u>/s/  *John K. Buche*                    </u>
John K. Buche (TX Bar No. 24012352)
Scott D. Compton (TX Bar No. 24032088)
BUCHE & ASSOCIATES, P.C.
1700 Post Oak Blvd., 2 Blvd. Pl., Suite 600
Houston, TX 77056
Tel.: (858) 459-9111
Fax: (858) 430-2426
jbuche@buchelaw.com

*ATTORNEY FOR PLAINTIFF NEXUS
PERFORATING LLC*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule CV-5(a)(3), I hereby certify that all counsel of record who are deemed to have consent to electronic service are being served on August 4, 2020 with a copy of this document via the Court's CM/ECF system.

/s/ *John K. Buche*_____
John K. Buche